Mark F. Gallagher
Hawaii Bar No.: 6016
mgallagher@hawaiiantel.net
66 Kaiholu Place
Kailua, Hawaii 96734
(808) 535-1500

HERMAN LAW
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431
Tel:  305-931-2200
Fax:  305-931-0877
Jeff Herman
Florida Bar No. 521647
jherman@hermanlaw.com
(pending application for *pro hac vice* admission)
Dennis E. Siegel
Florida Bar No. 258131
dsiegel@hermanlaw.com
(pending application for *pro hac vice* admission)
Lee Gill Cohen
Florida Bar No. 825670
lcohen@hermanlaw.com
(pending application for *pro hac vice* admission)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAII**

| | | |
|---|---|---|
| MICHAEL F. EGAN, III, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| BRYAN JAY SINGER, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, MICHAEL F. EGAN, III, hereby sues Defendant, BRYAN JAY SINGER, and

states the following:

## INTRODUCTION

Defendant, BRYAN JAY SINGER, manipulated his power, wealth, and position in the entertainment industry to sexually abuse and exploit the underage Plaintiff through the use of drugs, alcohol, threats, and inducements which resulted in Plaintiff suffering catastrophic psychological and emotional injuries. Defendant Singer did so as part of a group of adult males similarly positioned in the entertainment industry that maintained and exploited boys in a sordid sex ring. A Hollywood mogul must not use his position to sexually exploit underage actors.

## JURISDICTION, VENUE, AND PARTIES

1. Plaintiff, MICHAEL F. EGAN, III, is a citizen and resident of Clark County, Nevada, and is *sui juris*.

2. Defendant, BRYAN JAY SINGER, is a citizen and resident of the State of California and is *sui juris*.

3. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000.00 and the action is between citizens of different states.

4. A substantial part of the acts, events, or omissions giving rise to Plaintiff's claims arose in and around Kailua, Hawaii. Therefore, pursuant to 28 U.S.C. §1391(b)(2), venue is proper in the District of Hawaii.

## FACTS COMMON TO EACH COUNT
*Plaintiff Is Introduced To The M & C Estate*

5. When Plaintiff was in elementary school in the Midwest, he began modeling for print advertising. As time passed, he performed in school plays and was ultimately encouraged to

pursue acting professionally. For a period of time, he moved with his mother to New York and engaged in modeling for print advertising and in television commercials.

6.      When Plaintiff was 14 or 15, he moved to the Los Angeles, California, area with his family at the suggestion of his talent manager to further his acting career, and continued to model. He dreamed and aspired to have acting become his career.

7.      Plaintiff attended a very small private high school in the San Fernando Valley in the Los Angeles, California, area. Plaintiff was short and of a slight stature.

8.      There were approximately four children in Plaintiff's grade, one of whom was Scott Shackley (Scott) who Plaintiff considered a close friend. In early or mid-1998, Scott introduced Plaintiff to his older brother Chad Shackley (Chad) who, upon information and belief, was Scott's caretaker. Chad resided in a mansion in Encino, California, which was commonly referred to as the M & C Estate.  Plaintiff would often go to the M & C Estate to visit Scott. Marc Collins-Rector (Collins-Rector) also resided in the M & C Estate as did Chad and Scott. Upon information and belief, a sexual relationship existed between Collins-Rector and Chad.

9.      At the time, upon information and belief, Collins-Rector was the Chairperson of the Board of Directors of an online entertainment business known as Digital Entertainment Network (DEN). Both Chad and Collins-Rector were principals in DEN. Collins-Rector was instrumental in promoting and marketing DEN as a commercial venture that would revolutionize television and online entertainment, and DEN was considered at the time to be in the vanguard of the growing online entertainment industry. DEN was a well-known enterprise which attracted a significant number of prominent investors, including persons and organizations that were renowned in the entertainment industry such as Defendant Singer.

10. In an attempt to manipulate his compliance with the sexual demands of those adults who frequented the M & C Estate, Plaintiff was placed on DEN's payroll as an actor in Royal Standard, an online television show broadcast on DEN's network, and was paid approximately $1,500.00 per week. Plaintiff additionally was paid approximately $600.00 per week from different accounts without any designation of job duties, title, or position. Upon information and belief, salaries of this nature were paid to many of the teenage males lured to the M & C Estate to have sex with the adults who resided there or visited there for recreational and business purposes. Plaintiff was provided the opportunity to audition for other acting, commercial, and modeling jobs. Plaintiff was promised stock in DEN, was provided with extravagant gifts, and was transported on private jets to attractive locations.

*Sordid Parties At The M & C Estate*

11. Upon information and belief, Collins-Rector and Chad hosted many notorious parties on the grounds of the M & C Estate which were attended by numerous young males who had been lured to the M & C Estate as well as by DEN investors including Defendant Singer. The parties were typically sordid and featured sexual contact between adult males and the many teenage boys who were present for the parties. Further, the parties included the distribution of drugs and alcoholic beverages to the teenage boys at the party. Upon information and belief, the nature of the parties was well-known and notorious among many men in the Hollywood entertainment industry.

12. Soon after Plaintiff was introduced to Collins-Rector and Chad, he was often told by them in a bullying manner that they had "gaydar" and knew that Plaintiff was homosexual, a characterization which Plaintiff, who is heterosexual, categorically denied. He was told that he was part of the "group", referring to the numerous young males who were lured to the M & C

Estate for the purpose of sexual contact with the adult males who visited the M & C Estate ostensibly for recreational and business purposes. He was advised that those adult males controlled Hollywood and would destroy his hopes and dreams of an acting career if he did not keep them happy. They threatened to "eliminate" him and his family, and told him that they were monitoring not only his phone, but those of his family members, and asserted he would be "destroyed" if he ever disclosed the unconscionable activities that occurred at the Estate.

13. Defendant Singer was present for, and participated in, several of these threatening communications during which he told Plaintiff how the adults who resided in or frequented the M & C Estate controlled Hollywood and could decide whether Plaintiff's career aspirations and hopes would be realized. Defendant Singer was also present during times when threats were relayed to Plaintiff concerning his and his family's well-being.

14. The M & C Estate contained a number of bars and was replete with alcohol and drugs. The adults at the M & C Estate strenuously pressured the teenagers who were there, including Plaintiff, to ingest the copiously available drugs and alcohol. Plaintiff was often forced to consume alcoholic beverages and drugs, and was also surreptitiously administered drugs when they were placed in beverages that he consumed. Defendant Singer was often present at the M & C Estate when these drug and alcohol-related activities were occurring and knew, or should have known, that such was taking place.

*Defendant Singer Induced Or Coerced Plaintiff Into Sexual Activity*

15. During the infamous and degenerate parties at the M & C Estate, the adult males engaged in sexual contacts with the Plaintiff, as well as the other boys present. Plaintiff never freely, voluntarily, and knowingly consented to these sexual interactions, and often resisted them.

16. On several occasions when Plaintiff resisted submitting to sexual contact, Collins-Rector physically and aggressively held Plaintiff down in order to facilitate his sexual victimization.

17. On an occasion when Plaintiff was being resistant to sexual contact, Collins-Rector called him into the master bedroom of the M & C Estate. Collins-Rector pointed a firearm at Plaintiff and threatened to pull the trigger if his resistance to submitting to sexual contact continued. Collins-Rector then forcibly locked Plaintiff for a period of time in a gun safe which was located in a master bedroom closet.

18. Approximately 2–3 months after Collins-Rector began sexually abusing Plaintiff, Defendant Singer was socializing with Collins-Rector around the estate's swimming pool and Plaintiff was in the pool. In compliance with the "rules" imposed by Collins-Rector that people in the pool area were not allowed to wear clothes, Plaintiff was nude as was Defendant Singer. Collins-Rector ordered Plaintiff out of the pool, and Defendant Singer hugged Plaintiff and grabbed his bare buttocks. They then went to the jacuzzi where Collins-Rector had Plaintiff sit on his lap and fondled Plaintiff's genitals. Collins-Rector then passed Plaintiff to Defendant Singer and Plaintiff was made to sit on Defendant Singer's lap. Defendant Singer provided an alcoholic beverage to Plaintiff and mentioned finding a role for him in an upcoming movie that he was directing. Defendant Singer told Plaintiff how "this group" controls Hollywood, and that he was sexy. Defendant Singer masturbated Plaintiff and then performed oral sex upon him. Defendant Singer solicited Plaintiff to perform oral sex upon him which Plaintiff resisted. Defendant Singer flagrantly disregarded Plaintiff's unwillingness to submit, and forced Plaintiff's head underwater to make Plaintiff perform oral sex upon him. When Plaintiff pulled his head out of the water in order to breathe, Defendant Singer demanded that he continue which

Plaintiff refused. Defendant Singer then forced Plaintiff to continue performing oral sex upon him outside of the pool, and subsequently forcibly sodomized Plaintiff.

19. Defendant Singer visited the estate regularly and continued to sexually assault Plaintiff. He coerced Plaintiff to masturbate him and to acquiesce to his masturbating Plaintiff, and to each performing oral sex on the other. Defendant Singer also continued to anally rape Plaintiff. Defendant Singer similarly sexually assaulted Plaintiff at other locations.

*Acts Of Sexual Abuse And Exploitation In Hawaii*

20. On more than one occasion, Plaintiff was flown to Hawaii when he was 17 years old. Two of these trips took place on or between August 1, 1999, and October 31, 1999, during which times his stay lasted roughly one week. Plaintiff stayed in the Paul Mitchell estate in Kailua, Hawaii, with Collins-Rector, Shackley, and others, including a number of other juvenile males. While there, the Paul Mitchell estate contained firearms, drugs, and alcohol. As in California, there was frequent sexual contact by a number of adult males with teenage males and the providing of alcoholic beverages and drugs to the young males.

21. On each occasion when Plaintiff was in Hawaii, he was required to interact with Defendant Singer while at the Paul Mitchell estate. On more than one occasion, Defendant Singer provided him with drugs, including cocaine, a pill identified as "green triangle" which is believed to be a reference to the drug Ecstasy, Xanax, Rohypnol, pain pills believed to be Vicodin or Percocet, and alcoholic beverages. Defendant Singer promised acting roles to Plaintiff in an X-Men movie, in commercials, and in other of his projects, and professed that he would arrange for Plaintiff to audition for roles and projects in others' productions. Often when Plaintiff dared to resist the demands of Defendant Singer, he threatened to report Plaintiff's refusals to Collins-Rector which frightened Plaintiff due to Collins-Rector's history of threatening harm to

him and his family, his previous display of the firearm, his having previously locked Plaintiff in a gun closet, and the presence of firearms in the Paul Mitchell estate.

22.    During the first of the above-referenced trips to Hawaii, Plaintiff was instructed that he would spend the first two nights in a room with Defendant Singer. During the first night, Plaintiff took a long walk by himself. When he returned to the Paul Mitchell estate, he came across Defendant Singer who was in the pool area. Defendant Singer verbally and loudly confronted Plaintiff for not having been available for him earlier and demanded that he undress. Defendant Singer frightened Plaintiff by pushing him into the pool, and rebuked Plaintiff for his attitude and reminded him that he was there to keep people happy. Defendant Singer put a handful of cocaine against Plaintiff's nose and forced him to inhale it. Defendant Singer then provided Plaintiff with a beverage which he drank which significantly impacted his consciousness and his motor skills. Defendant Singer then entered the pool where he nonconsensually masturbated Plaintiff and performed oral sex upon him. Defendant Singer caused Plaintiff to rub his erect penis against Defendant Singer's buttocks. He forced Plaintiff's head underwater and made Plaintiff orally copulate him. He then caused Plaintiff to get out of the pool and lie face down on a lounge chair. To continue the sexual assault, Defendant Singer spit on Plaintiff's buttocks, spanked him, and forced a handful of cocaine onto Plaintiff's face. He then anally raped Plaintiff. He subsequently caused them to go to the jacuzzi where he provided another beverage to Plaintiff. Defendant Singer attempted to insert his penis into Plaintiff's mouth which Plaintiff resisted, but he ultimately was able to force his penis into Plaintiff's mouth. Defendant Singer then assisted Plaintiff to their room where he again anally raped Plaintiff.

23. The next night when Plaintiff went to take a shower after forced sexual contact with another adult, Defendant Singer entered the shower without Plaintiff's consent and stimulated Plaintiff's penis with his mouth and hand. Defendant Singer then induced Plaintiff to orally copulate him, followed by Defendant Singer anally raping Plaintiff. Plaintiff did not freely and voluntarily consent to participate in these sexual acts.

24. During the first evening of the second of the above-referenced trips to the Paul Mitchell estate in Hawaii, Defendant Singer came to Plaintiff's room and demanded that Plaintiff orally copulate him as well as submit to being orally copulated, and Plaintiff complied. Also during that trip, Defendant Singer anally raped Plaintiff approximately three times, one time being so painful that Plaintiff became tearful. On other occasions Defendant Singer compelled Plaintiff to orally copulate him and to be orally copulated by Defendant Singer. Plaintiff did not freely and voluntarily consent to being sexually assaulted and exploited as he was.

25. Upon information and belief, Collins-Rector was criminally prosecuted and convicted of crimes stemming from the sexual abuse of another young male in a similar manner and under similar circumstances, and is now a registered sexual offender.

26. Upon information and belief, Collins-Rector and Chad have had other civil lawsuits filed against them based upon having sexually abused or assaulted other underage males in a similar manner and under similar circumstances.

27. As an actual, legal, and proximate result of the sexual abuse of Plaintiff by Defendant Singer, Plaintiff has suffered, is suffering, and will continue to suffer: a) severe psychological, mental, and emotional injuries and trauma; b) expenses for counseling and therapy for the psychological, mental and emotional injuries and trauma; c) loss of enjoyment of life; d) shame, humiliation, and indignity; and e) substantial future expenses for counseling.

28. Defendant Singer's sexual exploitation and abuse of Plaintiff in Hawaii was accomplished through the employment of threats, intimidation, the administration of mind-altering substances, and fraudulent inducements to obtain Plaintiff's submission. Defendant Singer acted wantonly, oppressively, or with such malice as implied a spirit of mischief or criminal indifference to civil obligations. Defendant Singer's actions in sexually exploiting and abusing Plaintiff involved or included willful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

## COUNT I
**(Intentional Infliction of Emotional Distress)**

29. Plaintiff repeats and restates the facts set forth in paragraphs 5 through 28 above.

30. One or more of the acts of Defendant Singer which caused the egregious harm that Plaintiff has suffered were intentional, were outrageous, and did cause extreme emotional distress to Plaintiff.

WHEREFORE, Plaintiff demands against Defendant Singer an amount exceeding $75,000.00 for: 1) compensatory damages; 2) punitive and exemplary damages; 3) costs of the suit; 4) reasonable attorney's fees; 5) post-judgment interest as permitted by law; and 6) such other and further relief as the Court may deem proper.

## COUNT II
**(Battery)**

31. Plaintiff repeats and restates the facts set forth in paragraphs 5 through 28 above.

32. On one or more separate occasions, Defendant Singer did act with the intent to cause a nonconsensual, harmful, or offensive contact with Plaintiff, and the contact did occur.

WHEREFORE, Plaintiff demands against Defendant Singer an amount exceeding $75,000.00 for: 1) compensatory damages; 2) punitive and exemplary damages; 3) costs of the

suit; 4) reasonable attorney's fees; 5) post-judgment interest as permitted by law; and 6) such other and further relief as the Court may deem proper.

## COUNT III

### (Assault)

33. Plaintiff repeats and restates the facts set forth in paragraphs 5 through 28 above.

34. On one or more occasions Defendant Singer acted with the intent to cause a nonconsensual harmful or offensive contact with, or apprehension thereof by, Plaintiff, and Plaintiff did apprehend an imminent contact of his person by Defendant Singer.

WHEREFORE, Plaintiff demands against Defendant Singer an amount exceeding $75,000.00 for: 1) compensatory damages; 2) punitive and exemplary damages; 3) costs of the suit; 4) reasonable attorney's fees; 5) post-judgment interest as permitted by law; and 6) such other and further relief as the Court may deem proper.

## COUNT IV
### (Invasion of Privacy by Unreasonable Intrusion)

35. Plaintiff repeats and restates the facts set forth in paragraphs 5 through 28 above.

36. On one or more occasions Defendant Singer unreasonably intruded into the solitude or seclusion of Plaintiff by intentionally intruding, physically or otherwise, upon the private affairs or concerns of Plaintiff, or upon Plaintiff's solitude or seclusion, which intrusions would be highly offensive to a reasonable person. The private affairs or concerns, or solitude or seclusion, of Plaintiff which were unreasonably intruded upon by Defendant Singer include, but are not limited to, his bodily integrity, and his sexual choices.

WHEREFORE, Plaintiff demands against Defendant Singer an amount exceeding $75,000.00 for: 1) compensatory damages; 2) punitive and exemplary damages; 3) costs of the

suit; 4) reasonable attorney's fees; 5) post-judgment interest as permitted by law; and 6) such other and further relief as the Court may deem proper.

## FILING OF CERTIFICATE OF MERIT

37. Pursuant to HRS §657-1.8(d), Plaintiff has obtained and is filing a certificate of merit with the Clerk of the United States District Court for the District of Hawaii. The manner of the filing of the certificate of merit is subject to a ruling by this Court pursuant to Plaintiff's Motion For Leave Of Court To File Certificate of Merit Under Seal In A Traditional Paper Format.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Dated:  April 16, 2014.

Respectfully submitted,

Mark F. Gallagher
Hawaii Bar No.:  6016
66 Kaiholu Place
Kailua, Hawaii  96734
mgallagher@hawaiiantel.net
(808)535-1500

By:  /s/ Mark F. Gallagher
        Mark F. Gallagher

HERMAN LAW
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431

Tel:  305-931-2200
Fax:  305-931-0877
www.hermanlaw.com
Jeff Herman
Florida Bar No. 521647
jherman@hermanlaw.com
(pending application for *pro hac vice* admission)
Dennis E. Siegel
Florida Bar No. 258131
dsiegel@hermanlaw.com

Page 13

(pending application for *pro hac vice* admission)
Lee Gill Cohen
Florida Bar No. 825670
lochen@hermanlaw.com
(pending application for *pro hac vice* admission)